**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

CARLOS ECHEVERRY,

                **Petitioner,**

    - against -

UNITED STATES OF AMERICA

                **Respondent.**
-----------------------------------------------------X

**OPINION AND ORDER**

**12 Civ. 8411 (SAS)**

**04 CR 1162 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

On September 16, 2005, petitioner Carlos Echeverry waived

indictment and pled guilty to Superseding Information S1 04 CR 1162 (SAS) (the

"S1 Information").  The S1 Information charged Echeverry with two counts: Count

One charged Echeverry with conspiring to distribute, and to possess with the intent

to distribute, (a) five or more kilograms of cocaine, (b) one or more kilograms of

heroin, and (c) 50 or more grams of cocaine base, commonly known as "crack," in

violation of Title 21, United States Code, section 846.  Count Two charged

Echeverry with aiding and abetting the use, carrying, and discharge of a firearm

during and in relation to a drug-trafficking offense in violation of Title 18, United

States Code, section 924(c) ("section 924(c)").  Count One carried a statutory

1

mandatory minimum term of 120 months in custody while Count Two carried a

statutory mandatory minimum term of 120 consecutive months in custody.[1]

On June 29, 2010, this Court sentenced Echeverry to the mandatory

minimum term of 240 months imprisonment, to be followed by concurrent terms of

five years of supervised release.  Echeverry appealed his sentence, and the Second

Circuit affirmed the judgment on August 19, 2011.[2]  Echeverry is currently serving

his sentence.

Now proceeding pro se, Echeverry filed the instant habeas motion

pursuant to Title 28, United States Code, section 2255 ("section 2255") on

November 14, 2012, which he supplemented with a memorandum of law dated

April 1, 2013.[3]  Echeverry's section 2255 motion states the following grounds for

relief: (1) Petitioner was denied his Sixth Amendment right to counsel and his Fifth

Amendment right against self-incrimination because he provided a proffer to the

---

[1]     *See* 21 U.S.C. § 841(b)(1)(A); 18 U.S.C. § 924(c)(1)(A)(iii).

[2]     *See United States v. Echeverry*, 649 F.3d 159, 160 (2d Cir. 2011) (per curiam) (holding that Echeverry was subject to the ten-year, firearm-discharge enhancement when he and an accomplice brandished a firearm during a drug-related attempted robbery and the intended victim managed to grab the gun and shoot the accomplice).

[3]     *See* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("section 2255 motion"); Petitioner's Memorandum in Support of Motion to Vacate.

Government without counsel present (Grounds One and Four); (2) Petitioner was deprived of the effective assistance of counsel in connection with his plea negotiations and hearing because counsel did not adequately explain the charges to him (Ground Two); and (3) Petitioner was denied effective assistance of counsel on appeal because appellate counsel did not raise the argument that Petitioner's admission concerning the firearm was obtained in violation of his Fifth and Sixth Amendment rights (Ground Three).  For the reasons set forth below, Echeverry's habeas motion is denied.

## II.    BACKGROUND

### A.    Echeverry's Criminal Conduct and Proffer Sessions

On September 27, 2004, Echeverry handed a jacket containing 315 grams of heroin to an undercover detective and then discussed payment terms with that detective.[4]  Echeverry was arrested several days later, on October 4, 2004. That same day, he was presented before Magistrate Judge Frank Maas.  Pursuant to Rule 5 of the Federal Rules of Criminal Procedure, Echeverry was advised of his rights and Robert M. Baum was appointed to represent him.  Bail conditions were set but Echeverry was remanded because he could not satisfy them.

---

[4]    *See* 5/22/13 Declaration of Detective John R. Salvitti ("Salvitti Decl.") ¶ 3 and Sealed Complaint,  Ex. A; PreSentence Report ("PSR") ¶¶ 8-9.

On October 19, 2004, a Grand Jury returned an Indictment charging Echeverry with distribution, and possession with intent to distribute, of approximately 315 grams of heroin.  The evidence against Echeverry included: (1) the testimony of the undercover detective that Echeverry handed him a jacket containing heroin; (2) the testimony of agents conducting surveillance who witnessed the transaction; and (3) the recovery of approximately 315 grams of heroin.  In addition, the conversation between Echeverry and the undercover detective was recorded.

On March 4, 2005, Paul E. Warburgh, Jr. filed a notice of appearance as Echeverry's counsel.  Beginning March 31, 2005, Echeverry attended a series of proffer sessions with the Government in an effort to cooperate.  These meetings were conducted pursuant to proffer agreements.[5]  As indicated on the March 31, 2005 Proffer Agreement, the meeting on that date was attended by Echeverry, Warburgh, Assistant United States Attorney ("AUSA") Daniel Stein, and Detective John R. Salvitti of the New York City Police Department ("NYPD").  A Spanish interpreter was also present.  Following standard practice, the Government explained at the outset that the purpose of the meetings was for Echeverry to

---

[5]      *See* 3/31/05 Proffer Agreement, Ex. B to the Salvitti Decl.  This Proffer Agreement was signed by Echeverry, Warburgh, AUSA Stein, and Detective Salvitti.

disclose all prior criminal conduct in order for the Government to evaluate his potential cooperation.

Echeverry attended a second proffer session with the Government on April 25, 2005, which was also conducted pursuant to a proffer agreement.[6]  That meeting was attended by Echeverry, Warburgh, AUSA Stein, Detective Salvitti, and a Spanish interpreter.  Based on the March 2005 Proffer Agreement, it appears that Echeverry may have attended a third proffer session with the Government on August 1, 2005.[7]  The 8/1/05 Date of Continuation section was initialed by Echeverry, Warburgh, AUSA Stein, and Detective Salvitti.  The Government did not submit a signed Proffer Agreement for the August 1, 2005 proffer session.

During the first two proffer sessions, Echeverry disclosed that he had been involved in several multiple kilogram transactions involving cocaine and heroin with various drug traffickers, as well as a transaction involving 780 grams of crack cocaine.  During the April 2005 proffer session, Echeverry further disclosed that on one occasion in September 2002, he went with an accomplice to

---

[6]     See 4/25/05 Proffer Agreement, Ex. B to the Salvitti Decl.  This Proffer Agreement was signed by Echeverry, Warburgh, AUSA Stein, and Detective Salvitti.

[7]     See 3/31/05 Proffer Agreement, Dates of Continuation.

collect a drug-related debt while carrying a firearm.[8]  Echeverry acknowledged that

he brandished the firearm but that the intended victim grabbed the gun during the

confrontation and fired it, causing non-fatal injuries to Echeverry's accomplice.[9]

Defense counsel was present at the proffer sessions when Echeverry made these

disclosures.

### B.    Echeverry's Waiver of Indictment and Guilty Plea

Based on the proffer session disclosures, and pursuant to a written

Cooperation Agreement, Echeverry pled guilty to the S1 Information on September

16, 2005.  Echeverry's plea hearing was conducted before United States Magistrate

Judge Kevin Nathaniel Fox, with the aid of a Spanish interpreter.  Warburgh

represented Echeverry at the plea hearing.   At the hearing, Echeverry waived his

right to have the Government present the charges to the Grand Jury and consented

to proceeding by Information.[10]   Judge Fox confirmed that Echeverry understood

---

[8]      *See* Salvitti Decl. Ex. C at 5.

[9]      Salvitti Decl. ¶ 8; PSR ¶ 11. The PSR initially stated that Echeverry
brandished a firearm in furtherance of a plan to recover stolen narcotics, which
resulted in the discharge of that firearm.  *See* PSR ¶ 1.  At the request of
Echeverry's attorney at sentencing, I amended that portion of the report by adding
the following: "The alleged victim disarmed the accomplice. The alleged victim
then discharged the weapon.  That discharge injured the accomplice."  J&C,
Statement of Reasons, page 1.

[10]     *See* 9/16/05 Transcript of Plea Hearing ("Tr.") at 4-5.

the nature of the proceedings and that he was competent to enter an informed guilty plea.[11]  As part of this assessment, Judge Fox asked Echeverry if he had a full opportunity to speak with his attorney about the charges in the S1 Information, to which he replied in the affirmative.[12]  Echeverry told the Court that he was satisfied with his attorney.[13]

Judge Fox next reviewed the charges in the S1 Information and the maximum and mandatory minimum terms of imprisonment associated with each. [14] Echeverry confirmed that he understood the nature of each charge and the maximum penalties he was facing by pleading guilty.[15]  Judge Fox then advised Echeverry of the rights he would waive by pleading guilty.[16]  Judge Fox informed Echeverry that he had a right to: (1) plead not guilty and proceed to trial by jury; (2) have the Government bear the burden of proving his guilt beyond a reasonable doubt by competent evidence at trial; (3) be represented by an attorney at all stages of the proceeding and, if necessary, an attorney would be appointed for him; (4)

---

[11]     *See id.* at 6-7.

[12]     *See id.* at 7.

[13]     *See id.*

[14]     *See id.* at 8-11.

[15]     *See id.* at 13.

[16]     *See id.* at 12-13.

testify if he so desired, confront and question any witness against him, and not be forced to incriminate himself; and (5) have compulsory process used to compel witnesses to testify in his defense.[17]  Echeverry affirmed that he understood each of the rights and that he was waiving such rights by entering a plea of guilty.[18]  After the Government stated the elements of the offenses charged in the S1 Information, Echeverry stated that he still wished to plead guilty.[19]

Echeverry confirmed that he had discussed the application of the Sentencing Guidelines with his attorney.[20]  Judge Fox thoroughly reviewed the Cooperation Agreement with Echeverry who confirmed that: he read and reviewed the Cooperation Agreement with his attorney before signing it; he fully understood the Cooperation Agreement;  no one had forced him to sign the Cooperation Agreement; and the Cooperation Agreement constituted the complete and total understanding among himself, his attorney and the Government.[21]  Echeverry acknowledged that his plea was being made voluntarily and of his own free will.[22]

---

[17]     *See id.*

[18]     *See id.* at 13.

[19]     *See id*. at 14.

[20]     *See id*.

[21]     *See id*. at 15-18.

[22]     *See id*. at 15.

Judge Fox then asked Echeverry if he had committed the offenses in the S1 Information.[23]  With respect to Count One, Echeverry responded in the affirmative, stating:

> Your Honor, I, with other people, possessed for sale narcotics, crack cocaine, in Westchester and Manhattan. Cocaine, crack cocaine, and heroin.  And I agreed to do so and I knew it was unlawful.[24]

Echeverry confirmed that from 2001 to the date of his arrest, he had conspired to distribute more than five kilograms of cocaine, more than 50 grams of crack, and more than one kilogram of heroin.[25]  With respect to Count Two of the S1 Information, Echeverry stated:  "In September 2002, I was in a car in Manhattan with other people, and one of those people fired a gun.  I was there to collect some money for the sale of drugs."[26]

When Judge Fox asked defense counsel and the Government whether they were aware of any reason why the defendant should not plead guilty, both said no.[27]  Based on the allocution, Judge Fox recommended that this Court accept

---

[23]     *See id.* at 18.

[24]     *Id.*

[25]     *See id*. at 18-20.

[26]     *Id*. at 20.

[27]     *See id*. at 21.

Echeverry's guilty plea.[28]  At the conclusion of the plea hearing, Echeverry was

released on bail so that he could cooperate with law enforcement.[29]

### C.    Echeverry's Breach of the Cooperation Agreement

On February 8, 2007, Echeverry was arrested and charged in New

York State Supreme Court, New York County, with possession and sale of a

controlled substance.[30]  The Government construed this as a breach of Echeverry's

Cooperation Agreement, a provision of which required him to commit no further

crimes.   The Government notified this Court that it would not be making a 5K1.1

motion for a reduction in sentence based on Echeverry's cooperation.

### D.    Sentencing

In advance of sentencing, Echeverry's newly appointed counsel,

George Goltzer,[31] argued that the conduct underlying Count Two of the S1

Information –  the brandishing of a firearm which was fired by Echeverry's

---

[28]      *See id*. at 21-22.

[29]      *See* Salvitti Decl. ¶ 9.

[30]      *See* PSR ¶¶ 36-37.   On January 19, 2010, Echeverry pled guilty in
New York Supreme Court, New York County, to criminal sale of a controlled
substance in the third degree.  On July 12, 2010, after this Court imposed sentence,
he was sentenced to time served.

[31]      On May 1, 2008, Warburgh was relieved as Echeverry's counsel and
Goltzer was appointed to represent him.

intended victim – should not result in the discharge enhancement set forth in section 924(c)(1)(A)(iii).  Echeverry argued that because neither he nor his accomplice had possession of the firearm at the time of discharge, the discharge did not occur during the offense, thus making the  enhancement inapplicable. Citing *Dean* v. *United States*,[32] the Government argued that the language of section 924(c)(1)(A)(iii) does not require an intentional discharge and that the enhancement applies even if the discharge was accidental.

At sentencing, which took place on June 29, 2010, this Court  agreed with the Government's argument that *Dean* controlled and that the discharge enhancement applied.  In light of that ruling, the Court concluded that Echeverry was subject to a mandatory minimum term of imprisonment of 240 months, comprising a 120-month term on Count One and a mandatory consecutive 120-month term on Count Two.  Although the Guidelines called for a somewhat higher sentence of 288 to 330 months imprisonment, the Court concluded that the mandatory minimum sentence was sufficient, but not greater than necessary, in light of the various factors set forth in Title 18, United States Code, Section 3553(a).

---

[32]     556 U.S. 568, 577 (2009) ("Section 924(c)(1)(A)(iii) requires no separate proof of intent. The 10–year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident.").

### E.      Echeverry's Appeal

Echeverry appealed his conviction and sentence, arguing that the guilty plea allocution was legally insufficient to warrant the "discharge" enhancement under 18 U.S.C. § 924(c)(1)(A)(iii) because Echeverry and his accomplice were disarmed when the victim grabbed the gun and shot Echeverry's accomplice.   On August 19, 2011, the Second Circuit affirmed the judgment, finding that Echeverry was subject to the firearm discharge enhancement.[33]

## III.   LEGAL STANDARDS

### A.      Section 2255

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."[34]   Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside or correct a

---

[33]      *See Echeverry*, 649 F.3d at 160 ("Hence, the statute [18 U.S.C. § 924(c)(1)(A)] provides that the ten-year mandatory minimum applies 'if the firearm is discharged,' and it does not require that the firearm be discharged by the defendant.  Here, as Echeverry possessed a firearm in furtherance of a drug-related crime and the firearm was discharged during the course of that crime, by its plain terms the statute applies.").

[34]      *Yick Man Mui* v. *United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quotation marks and citations omitted).

sentence.  Specifically, "[s]ection 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law."[35]

A properly filed motion under section 2255 must allege that:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[36]  Thus, collateral relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[37]  A motion under section 2255 must set forth "the facts supporting each ground" for relief.[38]

---

[35]   *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2005).

[36]   *See* 28 U.S.C. § 2255.

[37]   *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[38]   Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings for the United States District Courts.  *Accord LoCascio v. United States*, 395 F.3d 51, 57 (2d Cir. 2005) ("'The petitioner must set forth specific facts which he is in a

A petitioner is entitled to a hearing on a motion filed under section 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[39]  To warrant a hearing on a motion under section 2255, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence."[40]  The court must then determine whether, viewing the record "in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief."[41]

However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."[42]  Nor is a court required to presume the credibility of factual assertions "where the assertions are contradicted by the record in the underlying

position to establish by competent evidence.'" (quoting *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974)) (alteration omitted)).

[39]    28 U.S.C. § 2255(b).  *See also Pham v. United States*, 317 F.3d 178, 184-85 (2d Cir. 2003).

[40]    *United States* v. *Aiello*, 814 F.2d 109, 113 (2d Cir. 1987).

[41]    *Puglisi* v. *United States*, 586 F.3d 209, 213 (2d Cir. 2009).

[42]    *Aiello*, 814 F.2d at 113-14.  *Accord Haouari* v. *United States*, 510 F.3d 350, 354 (2d Cir. 2007).

proceeding."[43]   Moreover, if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[44]

Depending on the allegations in a section 2255 motion, a "court may use methods under [§] 2255 to expand the record without conducting a full-blown testimonial hearing."[45]   Potential methods available to a court to supplement the record include "'letters, documentary evidence, and, in an appropriate case, even affidavits.'"[46]

### B.    Ineffective Assistance of Counsel

To establish his claim of ineffective assistance of counsel, a petitioner must show that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and that he suffered prejudice as a result of the representation that he received.[47]   A court considering an ineffective assistance claim must apply a "strong presumption" that counsel's

---

[43]     *Puglisi*, 586 F. 3d at 214.

[44]     *Id.* at 213.

[45]     *Chang* v. *United States*, 250 F.3d 79, 86 (2d Cir. 2001) (citing *Blackledge* v. *Allison*, 431 U.S. 63, 81-82 (1977)).

[46]     *Id.* (quoting *Raines* v. *United States*, 423 F.2d 526, 529-30 (4th Cir. 1970)).

[47]     *Strickland* v. *Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

representation was within the "wide range" of reasonable professional assistance.[48]
The petitioner's burden is to show "'that counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
Amendment.'"[49]  "Strategic choices made after thorough investigation of law and
facts relevant to plausible options are virtually unchallengeable."[50]  In evaluating
counsel's performance, the reviewing court must make every effort to "eliminate
the distorting effects of hindsight."[51]

A defendant is entitled to the effective assistance of counsel in
connection with plea negotiations because one of the basic duties of a defense
attorney is to provide clients with the benefit of his advice on whether to plead
guilty.[52]  "As part of this advice, counsel must communicate to the defendant the
terms of the plea offer, and should usually inform the defendant of the strengths

---

[48]     *Id.* at 689.  *Accord Bell* v. *Cone*, 535 U.S. 685, 698 (2002).

[49]     *Harrington* v. *Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*,
466 U.S. at 687).

[50]     *Strickland*, 466 U.S. at 690.  *Accord United States* v. *Kirsh*, 54 F.3d
1062, 1071 (2d Cir. 1995).

[51]     *Strickland*, 466 U.S. at 689.  *Accord Harrington*, 131 S. Ct. at 788
(stating that "the standard for judging counsel's representation is a most deferential
one").

[52]     *See Lafler* v. *Cooper*, 132 S. Ct. 1376, 1384 (2012); *Purdy* v. *United
States*, 208 F.3d 41, 44-45 (2d Cir. 2000).

and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."[53]   An attorney's failure to communicate a plea offer to his client or advise his client adequately about the decision to plead guilty, may constitute constitutionally deficient performance.[54]   To establish a Sixth Amendment violation, the petitioner must establish that his attorney failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty.[55]

In addition to proving that counsel's performance was objectively deficient, a petitioner must also prove that counsel's errors actually prejudiced his case.  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[56]   Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."[57]   To prove actual prejudice in

---

[53]   *Purdy*, 208 F.3d at 45.  *Accord Missouri* v. *Frye*, 132 S. Ct. 1399, 1408 (2012) ("defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused").

[54]   *See*, *e.g.*, *Cullen* v. *United States*, 194 F.3d 401, 404 (2d Cir. 1999); *United States* v. *Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria* v. *Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996).

[55]   *See Gordon*, 156 F.3d at 380; *Boria*, 99 F.3d at 496-98.

[56]   *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 693).

[57]   *Strickland*, 466 U.S. at 694.

plea proceedings, a petitioner must demonstrate "'a reasonable probability, that but for counsel's errors, he would not have pleaded guilty, and would have insisted on going to trial.'"[58]  This burden is particularly difficult to meet where a defendant was aware of the "actual sentencing possibilities" and nevertheless decided to plead guilty.[59]  The Second Circuit has held that the statement regarding the petitioner's claim that he would have accepted or rejected the plea had he been properly advised must be "directly attributable to the habeas petitioner, whether it be through sworn testimony in the main proceeding or by a sworn affidavit in support of the motion."[60]

      A claim that appellate counsel was ineffective can succeed only if "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker" and "there was a reasonable probability that the

---

[58]    *Premo* v. *Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985)).

[59]    *See Ventura* v. *Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992).  *See also United States* v. *Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (stating that where a defendant's specific claim is that counsel misled him as to the possible sentence which might result from his guilty plea, the issue is whether the defendant was aware of the  actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea).

[60]    *Puglisi*, 586 F. 3d at 216-17.

[omitted claim] would have been successful."[61]   "To prove ineffective assistance of appellate counsel, 'it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.'"[62]   Moreover, "[i]t is well established that '[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a defendant is] entitled.'"[63]

## IV.   DISCUSSION

### A.   Proffer Sessions

Echeverry argues that he received ineffective assistance of counsel because: (1)  his attorney (Warburgh) did not attend a proffer session with the Government where he admitted to significant criminal conduct; and (2) his attorney failed to explain the criminal charges and terms of his Cooperation Agreement to him.  In order to prevail on these claims, Echeverry must

---

[61]   *Mayo* v. *Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quotation marks omitted).

[62]   *Cuoco* v. *United States*, 208 F.3d at 27, 32 (2d Cir. 2000) (quoting *Mayo*, 13 F.3d at 533).

[63]   *Forbes* v. *United States*, 574 F.3d 101, 106 (2d Cir. 2009) (alteration in original) (quoting *Aparicio* v. *Artuz,* 269 F.3d 78, 99 (2d Cir. 2001) (internal quotation marks omitted)).

demonstrate that his counsel's performance was objectively unreasonable and that he was prejudiced as a result of that representation.  Echeverry fails to establish either prong of the *Strickland* test.

Echeverry claims that on the evening before his fourth proffer session, Warburgh's secretary visited him in prison and told him that Warburgh was not available for the proffer session due to an accident but that Echeverry should attend anyway and tell the Government everything he knew.[64]  However, the claim that Warburgh was not present at the proffer session where Echeverry admitted to the discharge of a firearm is factually incorrect.  Detective Salvitti states in his Declaration that Echeverry's counsel was, in fact, present during the pre-plea proffer sessions at which Echeverry disclosed his past criminal conduct, including the firearm incident.[65]  Detective Salvitti's statements are supported by the March 31, 2005 and April 25, 2005 Proffer Agreements, both of which are signed by

---

[64]     Warburgh states that he does not recall this incident.  *See* 5/14/13 Declaration of Paul E. Warburgh ("Warburgh Decl."), submitted in connection with the instant motion, ¶¶ 3-4.  The documentary record contradicts Echeverry's claim.  The record indicates that there were only three proffer sessions before Echeverry's guilty plea, that the admission at issue was made at the April 25, 2005 proffer, and that Warburgh was present at that proffer session.  *See* Salvitti Decl. ¶¶ 5-8 and Exs. B, D).

[65]     *See* Salvitti Decl. ¶¶ 5-8.

Warburgh.[66]  Furthermore, Special Agent Acheson's handwritten notes of the April 25, 2005 proffer session indicate that Echeverry discussed the firearm incident at that proffer.[67]  Finally, Warburgh states that he does not recall missing any of Echeverry's proffer sessions and that it was his longstanding practice that if he could not attend a proffer meeting, he would reschedule it.[68]

In sum, the documentary evidence – including signed Proffer Agreements, contemporaneous handwritten notes, and a Declaration from defense counsel – clearly shows that counsel was present at the proffer session where Echeverry disclosed the discharge of a firearm.  Accordingly, Echeverry's claim that his constitutional rights were violated because of counsel's alleged absence from a purported fourth proffer session is without merit.  Ground One is therefore rejected.

Echeverry also claims that his Fifth Amendment rights were violated because the Government allegedly went forward with the proffer sessions without counsel being present (Ground Four).  Echeverry argues that he should have been given *Miranda* warnings at the proffer session where his counsel was allegedly

---

[66]     *See id.*, Ex. B.

[67]     *See id.*, Ex. D at 4-5.

[68]     *See* Warburgh Decl. ¶ 4.

absent.  This claim fails because, as noted above, it is factually inaccurate.  In any

event, under Federal Rule of Criminal Procedure 5, the magistrate judge presiding

over a defendant's initial presentment is required to advise the defendant of his

right not to make statements to the authorities and to have counsel present at all

meetings with the authorities.  Echeverry does not assert that Magistrate Judge

Maas failed to comply with these requirements at his presentment on October 4,

2004.  Because there is every reason to believe that Echeverry had already been

formally advised of his rights, his fourth ground for relief is also rejected.

### B.    Guilty Plea

Echeverry's claim that counsel provided inadequate advice in

connection with his guilty plea is contradicted by the sworn statements he made at

his plea allocution on September 16, 2005.  At his guilty plea hearing, Echeverry

voluntarily and knowingly consented to the filing of the S1 Information which

contained the 924(c) gun charge .  Echeverry told Judge Fox that he was guilty of

that crime, stating: "In September 2002 I was in a car in Manhattan with other

people, and one of the people fired a gun.  I was there to collect some money from

the sale of drugs." [69]  Moreover, contrary to his present assertions, Echeverry told

Judge Fox that: (1) he had a full opportunity to speak with his attorney about the

---

[69]    Tr. at 20.

charges in the information and how he wishes to plead to them; (2) he was satisfied

with the assistance that his attorney had rendered; and (3) that he read and

reviewed the Cooperation Agreement with his attorney before signing it, that he

fully understood the Cooperation Agreement, that no one had forced him to sign

the Cooperation Agreement, and that the Cooperation Agreement constituted the

complete and total understanding among himself, his attorney, and the

Government.[70]   "Such '[s]olemn declarations in open court carry a strong

presumption of verity.'"[71]   Echeverry has not alleged any facts that would justify

overturning that strong presumption.[72]

      Moreover, Echeverry's statements at the guilty pea hearing are

consistent with Warburgh's Declaration, in which he states that in his many years

as a defense attorney it has always been his practice to "painstakingly explain

everything to a defendant prior to any guilty plea proceeding" and that he is sure

---

[70]    *See id.* at 15-18.

[71]    *Castillo* v. *United States*, Nos. 01 Civ. 6671, 99 CR 513, 2006 WL 2621081, at *2 (S.D.N.Y. Sept. 13, 2006) (quoting *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977)).

[72]    *See Ventura*, 957 F.2d at 1058 (observing that a district court's explanation of actual sentencing possibilities at a plea allocution may be sufficient to cure any misrepresentation by counsel regarding the defendant's probable sentence).

that is what happened here.[73]  Given the sworn statements he made at his plea

allocution, and Warburgh's Declaration, Echeverry's ineffective assistance claim

must be rejected because his contentions are wholly incredible.[74]

Echeverry cannot establish that his counsel's conduct was objectively

unreasonable.  His claim that his attorney failed to attend the relevant proffer

session is simply untrue and his claims that he did not understand the nature of the

charges against him or his Cooperation Agreement are belied by his sworn

statements at his plea allocution.  Nor does Echeverry satisfy the prejudice prong

of the *Strickland*  test.  Echeverry does not assert in a sworn affidavit that had he

been advised differently, he would not have pled guilty pursuant to a cooperation

agreement and would have insisted on going to trial.  This deficiency is fatal to this

ineffective assistance claim.[75]   In light of the overwhelming evidence against

Echeverry, the likelihood of conviction at trial, and of a severe sentence, was

extremely high.  It follows that Echeverry has failed to demonstrate that he was

---

[73]      Warburgh Decl. ¶ 5.

[74]      *See Blackledge*, 431 U.S. at 74.   *See also Adames* v. *United States,*
171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory
statements made under oath at his guilty plea proceeding carry a strong
presumption of verity and are generally treated as conclusive in the face of a
defendant's later attempt to contradict them.") (quotation marks and citations
omitted).

[75]      *See Puglisi*, 586 F.3d at 217.

prejudiced by the representation that Warburgh provided.[76]  Echeverry's second ground for relief is therefore rejected.

### C.    Appellate Counsel

Echeverry also argues that his appellate counsel, Goltzer, was constitutionally ineffective for failing to argue on appeal that his Fifth and Sixth Amendment rights were violated when his previous attorney failed to attend the proffer session in which he admitted to the discharge of a firearm without the benefit of a *Miranda* warning.  On appeal, Goltzer raised the same argument that he advanced at sentencing, namely, that the discharge enhancement set forth in section 924(c)(1)(A)(iii) did not apply to the facts of this case.  This was a substantial issue addressed in multiple submissions prior to sentencing and this Court gave it serious consideration.  Ultimately, this Court was persuaded that the Supreme Court's decision in *Dean* compelled application of the discharge enhancement.  Given the significance of the firearm discharge issue to Echeverry's sentence, appellate counsel's decision to focus on this issue was a valid exercise of counsel's strategic discretion.  Indeed, part of an appellate attorney's duty is to separate the stronger arguments from the weaker arguments and focus on the stronger arguments.  That is exactly what Goltzer did.

---

[76]      *See Hill*, 474 U.S. at 59.

Moreover, in his Declaration, Goltzer states that Echeverry never told him about any issue concerning the absence of counsel from proffer sessions or that he wanted an ineffective assistance claim to be raised on appeal.[77]  Goltzer correctly points out that this particular ineffective assistance claim could not have been raised on direct appeal because the facts in support of that claim were outside the record.[78]  Accordingly, Echeverry cannot establish that  "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[79]  Indeed, the opposite is true.  Counsel correctly focused on the more significant issue and omitted weaker issues.  In any event, given that Echeverry's present arguments are devoid of merit, he cannot establish that there was a reasonable probability that the omitted claim would have been successful.  Thus, Echeverry's ineffective assistance of appellate counsel claim (Ground Three) must be rejected.

---

[77]    *See* 5/12/13 Declaration of George R. Goltzer ¶ 3 ("During the course of representation, I was never told of any potential issue concerning the absence of counsel from meetings with the prosecution.  I was not aware that Mr. Echeverry wanted to raise such an issue on appeal.").

[78]    *See id.*

[79]    *Mayo*, 13 F.3d at 533.

### D.    Leave to Amend

Echeverry seeks to amend his motion to vacate[80] so that he can avail himself of the Supreme Court's decision in *Alleyne v. United States*.[81]  Because *Alleyne* is not retroactively applicable for the reasons discussed below, Echeverry's proposed amendment would be futile.  Leave to amend is therefore denied on the ground of futility.

### 1.    *Alleyne* in General

In *Alleyne*, the Supreme Court held that:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt.  Mandatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.[82]

---

[80]    *See* Motion to Amend the Motion to Vacate.

[81]    133 S. Ct. 2151 (2013).  In *Alleyne*, the district court found, by a preponderance of the evidence, that the defendant "brandished" a firearm, subjecting him to a seven-year mandatory sentence under 18 U.S.C. § 924(c)(1)(A)(ii), despite the jury's finding that the defendant merely used or carried a firearm, which would have subjected him to a five-year mandatory sentence.  The issue addressed in *Alleyne* was whether the finding of brandishing was an element of the 924(c) count which had to be submitted to the jury and found beyond a reasonable doubt.  *See id.* at 2163-64.  The Supreme Court answered this question in the affirmative.  *See id.*

[82]    *Id.* at 2155 (citation omitted).

In so holding, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that "judicial factfinding that increases the mandatory minimum sentence is permissible under the Sixth Amendment."[83]  *Harris* limited the holding of *Apprendi v. New Jersey*[84] to instances where judicial factfinding increases the statutory maximum sentence.[85]  In overruling *Harris*, the Supreme Court found that "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum."[86]  The Supreme Court explained its holding as follows:

> The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an "element" or "ingredient" of the charged offense.  In *Apprendi*, we held that a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed.  While *Harris* declined to extend this principle to facts increasing mandatory minimum sentences, *Apprendi's* definition of "elements" necessarily includes not only facts that increase the ceiling, but also those that increase the floor.  Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do

---

[83]     *Id.*

[84]     530 U.S. 466 (2000).

[85]     *See* 133 S. Ct.  at 2158.

[86]     *Id.* at 2163.  *See also id.* at 2160 ("While *Harris* limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum.").

so in a manner that aggravates the punishment.  Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.[87]

## 2.    Retroactivity

Echeverry argues that *Alleyne* should apply retroactively to cases on collateral review.[88]  In general, a new rule of law decided after a defendant's conviction becomes final may not be applied to the defendant's case on collateral review.[89]  In *Teague v. Lane*, the Supreme Court  recognized the following two exceptions to the general rule of non-retroactivity:

> (1) new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"; or (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding."[90]

---

[87]    *Id.* at 2158 (citations omitted).

[88]    Motion to Amend the Motion to Vacate ("Motion to Amend") ¶ 3.

[89]    *See Teague v. Lane,* 489 U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.").

[90]    *United States v. Mandanici*, 205 F.3d 519, 525 (2d Cir. 2000) (quoting *Sawyer v. Smith*, 497 U.S. 227, 241-42 (1990)).  *Accord United States v. Becker*, 502 F.3d 122, 129 (2d Cir. 2007).

*Alleyne* does not fall within either exception.  *Alleyne* did not place any individual

conduct beyond the Government's power to punish, nor did it prohibit the

imposition of any type of punishment.  Nor does the rule in *Alleyne* qualify as a

watershed rule of criminal procedure.  Furthermore, as explained by the Seventh

Circuit:

> *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S.
> 466 (2000).  The Justices have decided that other rules
> based on *Apprendi* do not apply retroactively on collateral
> review.  *See Schriro v. Summerlin*, 542 U.S. 348 (2004).
> This implies that the Court will not declare *Alleyne* to be
> retroactive.  *See also Curtis v. United States*, 294 F.3d 841
> (7th Cir. 2002) (*Apprendi* itself is not retroactive).[91]

Hence, the general rule against retroactivity applies to the *Alleyne* decision.

Echeverry is thus foreclosed from relying on *Alleyne* in support of the instant

motion.  Accordingly, Echeverry's motion for leave to amend his section 2255

motion is denied because the proposed amendment would be futile.

### E.   Sanctions

Echeverry moves for sanctions on the ground that the Government

allegedly failed to produce the handwritten notes of Detective Salvitti for all of the

---

[91]   *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (parallel
citations omitted).  The Second Circuit has not yet addressed the retroactivity of
*Alleyne*.

proffer sessions he attended.[92]  As detailed above, Warburgh was present at the

first two proffer sessions, on March 31, 2005 and April 25, 2005, both of which

have been substantiated with documentary evidence.  Moreover, it was at the April

25th proffer session that Echeverry disclosed the discharge of the firearm.  Thus, it

is irrelevant whether the third and fourth proffer sessions even took place, much

less the Government's alleged failure to produce handwritten notes of those

sessions.  Echeverry's motion for sanctions is therefore denied.[93]

## V.    CONCLUSION

          For the foregoing reasons, Echeverry's section 2255 motion is denied

in its entirety as is his Motion to Amend.  The remaining issue is whether to grant a

Certificate of Appealability ("COA").  For a COA to issue, a petitioner must make

---

[92]    *See* 7/14/13 Motion Asking for Sanctions ¶ 3 ("The notes are incomplete since only two of the meetings notes were submitted.").

[93]    The only reasonable sanction requested by Echeverry is to "not allow U.S. government to rely on evidence and documents not submitted to defendant." Motion Asking for Sanctions at 2, ¶ (c).  This sanction is unnecessary as the Government did not rely on anything it did not submit to Echeverry in its opposition papers.  In one way or another, the remaining sanctions sought by Echeverry involve a summary ruling of the habeas motion in his favor.  *See id.* ¶ (a) ("Eliminate all the evidence submitted by the U.S. government with its answer to defendant's motion."); ¶ (b) ("Admit the facts submitted by defendant in [his] § 2255 motion and brief."); (d) ("Admit the fact that defendant's attorney failed to assist defendant on several proffer meetings specially the ones where defendant talked about the firearm that lead [to] Count 2 of his sentence and superseding information."). Thus, even if the Government had engaged in misconduct, the proposed sanctions would not be appropriate.

a "substantial showing of the denial of a constitutional right."[94]   A "substantial

showing" does not require a petitioner to demonstrate that he would prevail on the

merits, but merely that "reasonable jurists could debate whether . . . the petition

should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'"[95]   Petitioner has made no

such showing.   Accordingly, this Court declines to issue a Certificate of

Appealability.   Furthermore, this Court finds that pursuant to 28 U.S.C. §

1915(a)(3), any appeal taken from this Order would not be in good faith.[96]   The

Clerk of the Court is directed to close this case and the section 2255 motion

docketed in criminal case number 04 CR 1162.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 7, 2013

---

[94]      28 U.S.C. § 2253(c)(2).

[95]      *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle,* 463 U.S. 880, 893 & n.4 (1983) (quotation marks and citations omitted)). *Accord Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,* 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

[96]      *See Coppedge* v. *United States*, 369 U.S. 438, 445 (1962).

**- Appearances -**

**Petitioner (Pro Se):**

Carlos Echeverry
# 56892-054
FCI Allenwood
P.O. Box 1000
White Deer, PA 17887

**For Respondent:**

John J. O'Donnell
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2490